UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN W. CHOATE,

    Plaintiff,

                                      Case No. 05-74583

-vs-                                       Judge Avern Cohn

NATIONAL RAILROAD PASSENGER
Corporation ("Amtrak"),

    Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This is an employment discrimination case. Plaintiff Norman W. Choate ("Choate") worked as an Assistant Conductor for Defendant National Railroad Passenger Corporation ("Amtrak") from 1992 until he was terminated in 2005. Choate claims that, during his employment, Amtrak discriminated against him based on his age and disabilities acquired as a result of an accident at work, and makes a number of other related claims. Choate has filed two previous actions against Amtrak in this court, one for age discrimination and one for violation of 45 U.S.C. § 797(b), a statute providing certain protections to railroad employees. Both actions were resolved against Choate on the merits.

1

Before the court is Amtrak's motion to dismiss the action for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and for summary judgment pursuant to Fed. R. Civ. P. 56.[1] For the reasons that follow, the motion will be granted.[2]

**II. Facts**

Choate was born in 1936 and has worked on railroads since 1966. He began his employment with Amtrak as an Assistant Conductor on July 10, 1992. In January, 1998, Choate applied for a position as a locomotive engineer; shortly thereafter his application was denied. The ostensible reason for denial was Choate's excessive unexcused absences. Choate claims that Amtrak had a policy of denying promotions to anyone over 50 years of age.

In May 1998, Choate filed a complaint with the Equal Employment Opportunity Commission ("EEOC") claiming that Amtrak violated the Age Discrimination in Employment Act ("ADEA"). On November 13, 1998, the EEOC issued a dismissal and notice of rights letter, informing Choate that the EEOC was unable to substantiate his claim and that, if he failed to file a lawsuit within 90 days of receipt of the notice, he would lose his right to sue on the claim. On March 25, 1999, Choate filed an action (Choate I) for violation of the ADEA in the United States District Court for the Northern

---

[1] The parties did not follow the Court's summary judgment motion practice guidelines. Neither party filed the statement of facts as a separate document or used separately numbered paragraphs. Choate did not file a list of each point of material fact as to which he contends there is a genuine issue for trial.

[2] The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

District of Illinois.  In December 1999, the action was transferred to the Eastern District of Michigan.  Because of a dispute about when Choate received the EEOC dismissal, the Court found that his claim was not barred by the statute of limitations.  However, in February 2001, the Court granted Amtrak's motion for summary judgment on the grounds that Choate failed to meet his burden of establishing that Amtrak's stated reason for not promoting him (excessive unexcused absences) was a pretext for discrimination.

Also in February 2001, while the Court was considering the motion for summary judgment in Choate I, Choate filed a second lawsuit (Choate II) against Amtrak, the United Transportation Union ("UTU"), and several individual defendants associated with Amtrak or UTU.  Proceeding *pro se*, Choate claimed that Amtrak violated 45 U.S.C. § 797b by failing to contact the Railroad Retirement Board "as their first source of supply in hiring qualified Railroad Engineers," and raised several other claims.  In June 2001, the Court dismissed Choate II, holding that Choate's claim of age discrimination was barred by the doctrine of issue preclusion and any other claim not previously raised was barred by the related doctrine of claim preclusion.

After Choate II was dismissed, Choate continued his work as an Assistant Conductor at Amtrak.  Choate sustained injuries on December 2, 2002, and July 9, 2003; at least the latter injury was sustained in the course of his employment.[3]  Choate negotiated a direct settlement in compensation for his injuries, which provided for a

---

[3] The record indicates that, contrary to Choate's assertions, the December 2, 2002 injury was not work-related, but rather a slip-and-fall accident at a K-Mart store. Regardless, the release executed between Choate and Amtrak covers the 2002 injury. The record does not disclose the nature of the July 9, 2003 injury.

3

payment of $80,000 (less $8,367.40 withheld to cover taxes and a lien) to Choate, in exchange for which Choate released Amtrak

> from all claims, demands, actions, and causes of action of every kind whatsoever and including, but without limitation of the foregoing, all liability for damages, costs, expenses, and compensation of any kind, nature or descriptions now existing or which may hereafter arise from or out of injuries and damages, known or unknown, permanent or otherwise, including the Federal Employer's Liability Act, Americans with Disabilities Act, The Rehabilitation Act of 1973 and any State or Local Disability Acts, sustained or received by **me**, at or near **Dearborn, Michigan on or about December 2, 2002 and Chicago, Illinois on or about July 9, 2003**. (Emphasis in original.)

The release was signed and dated June 18, 2004.

On March 17, 2003, Choate applied through UTU for a "light duty" assignment under Amtrak's transitional duty policy. His application was rejected on September 23, 2003, and a re-application was rejected on December 17, 2003.[4] Choate then raised the denial of his application with the UTU General Chairperson on February 8, 2004. Five days later, on February 13, 2004, the Chairperson sent Choate a letter informing him that he was not eligible for a "light duty" assignment because he had not suffered an on-duty injury as required by the Transitional Work Assignment Policy negotiated between UTU and Amtrak. On August 9, 2005, Choate filed another charge with the EEOC claiming that UTU discriminated against him due to his age and disability by failing to assist him in obtaining a "light duty" assignment. The EEOC issued a dismissal and "right to sue letter" on November 8, 2005.

---

[4] In his First Amended Complaint, Choate states that Amtrak terminated his employment on December 17, 2003, but then contradicts himself by saying that he continued to work as an Assistant Conductor through 2005. It appears that the alleged termination to which Choate refers may have been merely a denial of his application for a "light duty" assignment.

On December 2, 2005, Choate, again proceeding *pro se*, filed this action ("Choate III") against Amtrak. After retaining counsel, Choate filed his First Amended Complaint ("FAC") on May 3, 2006, adding UTU as a defendant. On November 20, 2006, the Court issued an order dismissing Choate's claims against defendant UTU and dismissing UTU from the case.

### III. Discussion

#### A. Legal Standard

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to

5

find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## B. Preclusion

### 1. Standard

The twin doctrines of claim preclusion and issue preclusion embody the "fundamental precept...that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction...cannot be disputed in a subsequent suit between the same parties or their privies." Mont. v. U.S., 440 U.S. 147, 153 (1979) (quoting S. Pac. R.R. Co. v. U.S., 168 U.S. 1, 48-49 (1897)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. at 153-54.

Issue preclusion, also known as collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided in a prior civil action." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984). The doctrine applies to prevent relitigation of an issue in a subsequent civil action when (1) the prior proceedings were between the same parties, (2) the prior proceedings culminated in a valid final judgment, (3) the issue was actually litigated, and (4) the issue was necessarily determined. See Kaufman v. BDO Seidman, 984 F.2d 182, 184 (6th Cir. 1993); Chakan v. City of Detroit, 998 F. Supp. 779, 783 (E.D. Mich. 1998).

By contrast, claim preclusion, also known as *res judicata*, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Migra, 465 U.S. at 77 n.1. Under this doctrine, subsequent legal action is barred when (1) the prior action was decided on the merits; (2) the issues raised in the subsequent case either were resolved in the prior case or, through reasonable diligence, might have been raised and resolved in the prior case; and (3) both actions involved the same parties or their privies. See Smith, Hinchman & Grills, Assocs., Inc. v. Tassic, 990 F.2d 256, 257-58 (6th Cir. 1993); Chakan, 998 F. Supp. at 782.

## 2. Analysis

Choate's claims of age discrimination by Amtrak, listed as counts 4[5] and 6 of the FAC, are barred by the doctrine of issue preclusion. These claims are identical to those raised in Choate I, which resulted in a valid final judgment holding that Choate failed to meet his burden of establishing that Amtrak's reason for not promoting him (excessive unexcused absences) was a pretext for discrimination. The issue of age discrimination was actually litigated and necessarily determined as part of the Court's order for summary judgment.

Likewise, Choate's claim that Amtrak violated 45 U.S.C. § 797b was raised in Choate II and dismissed in a valid final judgment. The issue was actually litigated and the Court's holding that the claim of § 797b violation was precluded was necessary to the final judgment dismissing the case.

---

[5] Choate's FAC erroneously lists two claims as "Count 4"; the age discrimination claim is the second of these.

Other of Choate's claims are barred by claim preclusion because they depend on events that occurred prior to the filing of Choate I and Choate II and relate closely to the claims raised in those cases, such that they should have been raised in at least one of the two prior lawsuits. Specifically, Choate's claim in count 10 of the FAC that Amtrak committed violations of the Rehabilitation Act "commencing in 1992" by failing to promote Choate to the position of engineer appears to be based on the same events that gave rise to his claims of age discrimination. It should therefore have been raised in the prior litigation and will not be considered here.

Choate's claim for retaliation under the Michigan Elliott-Larsen Civil Rights Act ("ECLRA") is also barred by claim preclusion to the extent it depends on actions occurring before the filing of Choate II. In the FAC, Choate states that Amtrak retaliated against him for filing grievances in response to alleged discrimination, but never specifies to which grievance he refers, when the retaliation took place, or the nature of the retaliation. To the extent that the retaliation took place before Choate II was filed, however, Choate's claim is precluded.

The same analysis applies to Choate's claim in count 5 of the FAC of violations of the Americans With Disabilities Act ("ADA"). It is not clear from the face of the complaint precisely when or in what manner Amtrak is alleged to have violated the ADA, but any claim of violation occurring before Choate II was filed will be barred.

### C. The Release

Choate and Amtrak executed a contract whereby, in exchange for payment of $80,000 less certain deductions, Choate agreed to release Amtrak from all claims arising out of the injuries he sustained on December 2, 2002, and July 9, 2003. The

9

release specifically references, but by its terms is not limited to, the Federal Employer's Liability Act ("FELA"), the ADA, the Rehabilitation Act, and state or local disability acts. Assuming that the release is enforceable, it would require dismissal of Choate's claims in count 1 (negligent infliction of emotional distress), count 2 (the Safety Appliances Act ("SAA")), count 3 (FELA), and count 4 (SAA),[6] all of which arise directly out of these injuries. In addition, it would require dismissal of count 9, which aims to invalidate the release; count 10, a claim under the Rehabilitation Act based on the underlying injuries; and count 11, a claim under the ELCRA for retaliation based on the injuries.[7]

The release is enforceable. As the party attacking the validity of a FELA relese, Choate bears the burden of establishing its invalidity. Callen v. Pa. R.R. Co., 332 U.S. 625, 630 (1948). To this end, Choate argues that the release is an attempt to escape liability that runs afoul of 45 U.S.C. § 55, part of FELA. That provision states: "Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."

Choate's argument ignores a substantial line of precedent holding that "FELA is not offended where there is a compromise of a claim of liability that settles a specific

---

[6] As noted above, Choate's FAC erroneously labels two separate claims as "count 4"; the SAA claim is the first of these.

[7] The factual basis of the latter two claims (counts 10 and 11) is not clear from the face of the complaint, but the latest event to which they could possibly refer is the denial of Choate's request for a "light duty" assignment prior to the execution of the release. Because these claims are closely related to the physical injuries and arose prior to the execution of the release, they should be barred if the release is held to be valid.

10

injury sustained by an employee." Babbitt v. Norfolk & W. Ry. Co., 104 F.3d 89, 92 (6th Cir. 1997); see also Callen, 332 U.S. at 631 (noting that a release is "not a device to exempt from liability but is a means of compromising a claimed liability" and "where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation"); South Buffalo Ry. Co. v. Ahern, 344 U.S. 367, 372 (1953) ("full and fair compromises of FELA claims do not clash with the policy of the Act"). "To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." Babbitt, 104 F.3d at 93.

In this case, the release executed by Choate and Amtrak is valid to the extent that it was intended to resolve claims under FELA or other law arising out of the specific injuries in controversy, i.e. the injuries Choate sustained on December 2, 2002 and July 9, 2003. Counts 1, 2, 3, and 4[8] arise out of these injuries and are therefore dismissed.

Choate also attacks the release on grounds that it was obtained by fraud. However, Choate alleges no specific facts to support his fraud claim, instead merely stating that the release was "overreaching" and that "a reasonable inference arises that Amtrak's agents dissembled in representations made to induce [Choate] to sign the release." Without any specific allegations as to the nature of the claimed fraud or even a scintilla of support from record evidence, Choate cannot invalidate the release on

---

[8] The first of two counts labeled "count 4" in the FAC.

11

grounds of fraud. See Fed. R. Civ. P. 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").

Finally, Choate argues that the release should be set aside on grounds of economic duress because Amtrak failed to promote him and failed to grant him a "light duty" assignment. This argument is simply a restatement of other claims in Choate's FAC that, for reasons discussed elsewhere, do not entitle him to relief. Because Choate cannot establish that Amtrak applied unlawful coercion in inducing him to sign the contract, this argument for invalidating the release also fails.

## D. Statutes of Limitations

### 1. Federal Employers' Liability Act

Aside from the FELA claims that are barred by the release, Choate advances a claim under FELA for hearing loss caused by exposure to loud noises from 1992 until the present. Where a FELA plaintiff contends that an occupational injury results from a continuous exposure to a harmful condition over a period of time, courts employ the "discovery rule." Urie v. Thompson, 337 U.S. 163, 170 (1949). Under the discovery rule, a cause of action is deemed to accrue "when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 814 (6th Cir. 1996) (quoting Fries v. Chicago & Nw. Trans. Co., 909 F.2d 1092 (7th Cir. 1990)), abrogated on other grounds, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). That is, the discovery rule demands an objective inquiry. Furthermore, the rule imposes on plaintiffs "an affirmative duty to investigate the potential cause of his injury." Fries, 909 F.2d at

12

1092. "[T]he fact that an injury 'has not reached its maximum severity...but continues to progress does not relieve the plaintiff of the duty to use reasonable diligence to discover the original injury and its cause." Aparicio, 84 F.3d at 815 (citations omitted). The plaintiff need not establish the injury and cause with certainty or receive a confirmed medical diagnosis, "but only need know or have reason to know of a potential cause." Fries, 909 F.2d at 1092.

In this case, Choate was informed as early as February 1988, after a hearing test, that he had "hearing loss in the high pitches in both ears." By 1998, Choate was complaining of noises, pain in his ears, and difficulty hearing. He continued to have his hearing evaluated throughout 1999, and in 2000 was again advised of "hearing loss in the high pitches in both ears" as well as "a potential Standard Threshold shift (change in hearing)." In 2001, Choate stated that he had pain in his ears, experienced "fluctuating hearing loss," and worked at a "noisy job."

Reading the record in the light most favorable to Choate, he knew or had reason to know of the hearing loss and its alleged cause no later than 2001. The FELA statute of limitations is three years. 45 U.S.C. § 56. Because Choate did not file this action until December 2005, his claim for hearing loss under FELA is time-barred.

**2. Family and Medical Leave Act**

In count 14 of the FAC, Choate contends that on May 25, 2003, Amtrak erroneously denied him leave from work to which he was entitled under the Family and Medical Leave Act ("FMLA"). The ordinary statute of limitations for FMLA benefits claims is two years. 29 U.S.C. § 2617(c); Ricco v. Potter, 377 F.3d 599, 602 (6th Cir. 2004). Although the limit may be extended to three years for "willful" violations of the

statute, id., Choate's complaint alleges only that Amtrak "erroneously computed" his eligibility, not that they wilfully violated the statute. Choate's bare assertions of wilfulness, raised for the first time in his response brief in his brief without a scintilla of supporting evidence, will not be credited. Choate did not file this action until December 2005. His claim for violation of the FMLA is therefore barred by the statute of limitations.

### 3. Americans With Disabilities Act

The statute of limitations for Title I the ADA, relating to employment discrimination, is 180 days. 42 U.S.C. § 200e-5(e)(1); 42 U.S.C. § 12117(a).[9] Choate's claim for violation of the ADA alleges that the violation occurred, at the latest, on May 11, 2005, when Amtrak informed him that it had no "restricted work" which he was able to perform. Choate did not file this action until December 2, 2005, more than 180 days later, so Choate's claim under the ADA is time-barred.

### 4. Tolling

Choate argues that the statutes of limitations applicable to all of his claims should be tolled because he suffered from diminished capacity due to a severe depressive episode concurrent with his efforts to file the case *pro se*. Choate's argument fails because he has not provided the Court with adequate (or in fact any) evidence that he suffered from a severe depressive episode that rendered him mentally incompetent during the relevant time period. As recognized by the court in Bassett v. Sterling Drug, Inc., 578 F. Supp. 1244, 1248 (S.D. Ohio 1984), objective standards should generally

---

[9] Choate does not state that he filed a charge with a state deferral agency, which could lengthen the applicable statute of limitations.

be applied to "protect defendants against specious allegations of mental incompetence advanced in desperate efforts to save time-barred claims." The Bassett court held that generally, a plaintiff must be adjudicated to be mentally incompetent by a court of competent jurisdiction or be institutionalized during the filing period under a diagnosed condition or disability which rendered him of unsound mind. Id. At the very least, a plaintiff must provide the court with some competent evidence of mental incompetence. Choate has failed to do so, and therefore the applicable statutes of limitation will apply without tolling.

### E.  Voluntary Dismissal

Choate agrees in his response brief that his claim for violation of 45 U.S.C. § 231b, raised in count 13 of the FAC, should be dismissed.

### IV.  Conclusion

For the reasons stated above, Amtrak's motion is GRANTED. The case is DISMISSED.

SO ORDERED.


Dated:  September 27, 2007         s/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 27, 2007, by electronic and/or ordinary mail.


                                    s/Julie Owens
                                   Case Manager, (313) 234-5160

15